■ HSBC Mortgage Services, Inc., Respondent, v Kenyon J. Alphonso, Also Known as Kenyon Alphonso, et al., Defendants, and Point Holding Alpha, LLC, Appellant. [874 NYS2d 131]—

In an action to foreclose a mortgage, the defendant Point Holding Alpha, LLC, appeals, as limited by its brief, from so much of an order of the Supreme Court, Kings County (Lewis, J.), dated August 20, 2007, as granted the plaintiff's motion for summary judgment on the complaint insofar as asserted against it.

Ordered that the order is affirmed insofar as appealed from, with costs.

The real property at issue is a two-family house in Brooklyn. By deed dated January 6, 2004, and recorded in the Office of the City Register of the City of New York (hereinafter the Office) on August 10, 2004, title to the subject property was transferred from Terrance Bridgeman to Chaim Parnes for the sum of $600,000. On January 6, 2004, the same date as he acquired title, Parnes mortgaged the subject property to Florida Bank, N.A. doing business as Florida Bank Mortgage, for the sum of $420,000. This mortgage (hereinafter the Florida Bank mortgage) was recorded in the Office on August 10, 2004.

Parnes sold the subject property to the defendant Kenyon J. Alphonso, also known as Kenyon Alphonso by deed dated October 11, 2005 for $600,000 (hereinafter the Alphonso deed). The Alphonso deed was filed in the Office on November 21, 2005. Parnes used $416,627.11 of the proceeds he received from Alphonso to pay off the Florida Bank mortgage. A satisfaction of mortgage memorializing the satisfaction of the Florida Bank

mortgage, dated October 27, 2005, was recorded on December 9, 2005.

Just a month after he purchased the subject property, two weeks before his own deed was recorded, Alphonso transferred title to the subject property to Point Holding Alpha, LLC (hereinafter Point), by deed dated November 7, 2005, for just $20,000 (hereinafter the Point deed). The Point deed was recorded three days later, on November 10, 2005, 11 days before the Alphonso deed.

Alphonso had taken out a $480,000 mortgage on the subject property from Encore Credit Corp, doing business as ECC Encore Credit (hereinafter Encore), on October 11, 2005, the same day he took title to the subject property. According to an appraisal of the subject property commissioned by Encore, the subject property was worth $600,000. Encore recorded this mortgage (hereinafter the Encore mortgage) on November 21, 2005. Encore subsequently assigned the Encore mortgage to the plaintiff, HSBC Mortgage Services, Inc. (hereinafter HSBC), by an assignment of mortgage dated June 2006. The assignment (hereinafter the HSBC mortgage) was recorded in the Office on July 20, 2006.

When Point purchased the subject property for $20,000, it admittedly knew that the subject property had been appraised for $600,000, and was encumbered by the $480,000 mortgage. However, Point also apparently knew that the Encore mortgage had not yet been recorded at the time Point purchased the subject property. Indeed, at the time Point purchased the subject property, a title search would have revealed that the seller, Alphonso, although in possession of the subject property, was not the record owner; at the time, Parnes remained the record owner. A title search would have also revealed that Parnes had satisfied the Florida Bank mortgage, also of record.

When HSBC brought the instant foreclosure action to foreclose on the HSBC mortgage, Point raised the affirmative defense that it had recorded the Point deed to the subject property before HSBC filed and recorded the HSBC mortgage. Thus, Point claimed that it had priority of title. HSBC moved for summary judgment, claiming that, since Point did not purchase the subject property as a bona fide purchaser, its deed was, in fact, subordinate to the HSBC mortgage. The Supreme Court agreed, and granted HSBC's motion. We affirm the order insofar as appealed from.

"[T]he lien of a mortgage is extinguished upon the sale of the real property affected thereby unless the purchaser has knowledge, either actual or constructive, of the existence of the

mortgage" (*Baccari v De Santi,* 70 AD2d 198, 201 [1979]). Moreover, "[t]he intended purchaser must be presumed to have investigated the title, and to have examined every deed or instrument properly recorded, and to have known every fact disclosed or to which an inquiry suggested by the record would have led. If the purchaser fails to use due diligence in examining the title, he or she is chargeable, as a matter of law, with notice of the facts which a proper inquiry would have disclosed" (*Fairmont Funding v Stefansky,* 301 AD2d 562, 564 [2003] [citations omitted]). Here, at the time Point purchased the property at issue, the person in possession of the property was not the owner of record. Point, therefore, had a reasonable duty of inquiry to investigate the apparent discrepancy (*see Fairmont Funding v Stefansky,* 301 AD2d 562, 564 [2003]; *Hicksville Props. v Wollenhaupt,* 273 AD2d 356, 357 [2000]). Consequently, Point had at least constructive knowledge of a mortgage. Indeed, Point's principal averred before the Supreme Court that matters of public record concerning the subject property were "easy for me to find." Had Point engaged in any effort to pay the mortgage of record, it would have discovered that the mortgage had been satisfied on October 27, 2005, a few weeks before it actually purchased the subject property.

Moreover, Point did not purchase the subject property for valuable consideration, a condition for a purchaser to invoke the protection of the recording statutes (*see* Real Property Law § 291). "[A] nominal sum, though actually paid, or an antecedent debt, or a promise on the part of the grantee from which he can be relieved, do not constitute valuable considerations" (*Turner v Howard,* 10 App Div 555, 559 [1896]; *see Lang v Mueller,* 149 App Div 926 [1912]). Here, Point paid $20,000 for a property appraised at $600,000. Despite its contention that the mortgage on the property should be deemed part of its consideration, Point presented no evidence that it sought in any way to make payments on the alleged mortgage. Moreover, although it submitted a contract for repairs totaling more than $100,000, it presented no evidence that it actually paid for any such repairs. Accordingly, Point was not a bona fide purchaser for value and, therefore, was not entitled to the protection of the recording statutes (*see* Real Property Law § 291). Santucci, J.P., Covello, Leventhal and Belen, JJ., concur.